UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SHAMEIKA MOODY, as an individual and on behalf of others similarly situated,

        Plaintiff,

  v.

CHARMING SHOPPES OF DELAWARE, INC.; LANE BRYANT, INC.; CHARMING SHOPPES, INC.; and DOES 1 through 20, inclusive,

        Defendants.

No. C 07-06073 MHP

**MEMORANDUM & ORDER**

**Re: Defendant Charming Shoppes of Delaware, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction**

On October 11, 2007 plaintiff Shameika Moody ("Moody"), on behalf of herself and others similarly situated, brought suit against Charming Shoppes of Delaware, Inc. ("CSDI") and other defendants.[1] Plaintiff alleges that while she was employed at a Lane Bryant retail store, defendants: 1) failed to pay her overtime wages pursuant to California Labor Code section 1194 et. seq.; 2) violated California Labor Code section 203; 3) violated California Labor Code section 226.7; 4) committed fraud; 5) violated California Labor Code section 226; and 6) engaged in unfair business practices as defined by California Business and Professions Code section 17200 et. seq. Now before the court is CSDI's motion to dismiss for lack of personal jurisdiction. The court has considered the parties' arguments fully, and for the reasons set forth below, the court rules as follows.

BACKGROUND

I.   Procedural History

Plaintiff Shameika Moody was employed as an assistant manager at a Lane Bryant retail store in California from November 2006 to July 2007. Complaint at 4. She alleges that during this time CSDI and the other defendants intentionally failed to pay her and other Lane Bryant employees overtime wages as required by California law. Id. at 10–11. She also alleges that CSDI and the other defendants required Lane Bryant employees to work through required meal breaks. Id. at 12. Plaintiff thus seeks to recover the unpaid balance of her overtime wages, compensation for missed meal periods, interest, waiting time penalties, attorneys fees and costs of suit. Id. at 17–18.

On December 10, 2007 plaintiff filed an identical lawsuit in San Francisco Superior Court against Lane Bryant, Inc. Huang Dec., ¶ 2. While the claims for relief in the state court action are identical to those in the instant action, plaintiff did not name CSDI as a defendant in the state court action. Id. On January 7, 2008 CSDI filed a motion to dismiss for lack of personal jurisdiction.

II.   Jurisdictional Facts

CSDI is a wholly-owned subsidiary of Charming Shoppes, Inc. ("CSI"), a publicly-traded holding company that is incorporated and headquartered in Pennsylvania. Sullivan Dec., ¶ 3. CSDI is also incorporated and headquartered in Pennsylvania. Id., ¶ 3. CSI, CSDI's parent company, has a number of direct and indirect operating subsidiaries which own and operate retail stores in California. Id., ¶¶ 2–3; Camoratto Dec. ¶ 2.

CSDI's contacts with California do not include a physical office, mailing address or bank accounts. Sullivan Dec., ¶ 5. CSDI does, however, provide certain shared services such as payroll services and legal consultation to subsidiaries of CSI, some of which operate retail stores in California. Id., ¶ 3; Camoratto Dec. ¶ 2. In this respect, CSDI acts as a common paymaster for all employees of Lane Bryant stores in California. Camoratto Dec., ¶ 3.

Since January 2002 CSDI has paid these employees either by payroll check or direct deposit drawn from one of CSDI's bank accounts in North Carolina. Id. Included with these payments are

itemized wage statements. Hart Dec., ¶ 2. CSDI also remits California state payroll taxes for Lane Bryant and other CSI subsidiaries operating in California. Sullivan Dec., ¶ 5.

LEGAL STANDARDS

Plaintiff bears the burden of proving that the court may exercise personal jurisdiction over the defendant. Schwarzenegger v. Fred Motor Co., 374 F.3d 797, 800 (9th Cir. 2004). If the jurisdictional challenge is based solely on written papers, plaintiff must make a prima facie showing of jurisdiction. Harris Rutsky & Co. Ins. Servs. v. Bell & Clements, Ltd., 328 F.3d 1122, 1129 (9th Cir. 2003). If, however, the court holds an evidentiary hearing on the issue, then the burden on the plaintiff increases to a preponderance of the evidence. Rano v. Sipa Press, Inc., 987 F.2d 580, 587 n.3 (9th Cir. 1993).

Where there is no federal standard establishing personal jurisdiction, district courts apply the jurisdictional standards of the state in which the district court sits. Panavision Int'l, L.P. v. Toeppen, 141 F.3d 1316, 1320 (9th Cir. 1998). California courts may properly exercise personal jurisdiction to the extent allowed by the Due Process Clause of the United States Constitution. Threlkeld v. Tucker, 496 F.2d 1101, 1103 (9th Cir. 1974). Courts may exercise personal jurisdiction over a nonresident defendant, consistent with due process, if the defendant has "certain minimum contacts" with the forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Int'l. Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (internal quotations omitted).

If a nonresident defendant has contacts with the forum state that are "substantial" or "continuous and systematic," then courts may exercise general personal jurisdiction over the defendant without regard to whether the action arises from the defendant's activities in the forum state. Perkins v. Benguet, 342 U.S. 437 (1952). If a nonresident defendant's activities within the forum state are less substantial, then courts may still exercise specific personal jurisdiction where the action arises out of or is related to the defendant's particular activities within the forum state. Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 n.8 (1984).

DISCUSSION

I.      General Jurisdiction

CSDI asserts that its contacts are not sufficient to establish general personal jurisdiction because CSDI lacks an actual, physical presence in California.  Plaintiff argues that CSDI has significant, systematic and continuous contacts with California resulting from all of the paychecks, wage statements and payroll taxes CSDI sends into the state.

The Ninth Circuit interprets Perkins and Helicopteros as establishing a "fairly high standard" for general jurisdiction.  Brand v. Menlove Dodge, 796 F.2d 1070, 1073 (9th Cir. 1986); see also Amoco Egypt Oil Co. v. Leonis Navigation Co., 1 F.3d 848, 851 n.3 (9th Cir. 1993) ("[w]e have stated that 'the Perkins holding that the cause of action need not arise out of the defendant's activities in the forum is limited to its unusual facts,' and regularly have declined to find general jurisdiction even where the contacts were quite extensive") (internal citation omitted).  Factors weighing heavily in the general jurisdiction analysis include whether the defendant: 1) is incorporated in the state; 2) makes sales in the state; 3) solicits or engages in business in the state; 4) serves the state's markets; 5) designates an agent for service of process in the state; or 6) holds a license in the state.  Bancroft & Masters, Inc. v. Augusta Nat'l, Inc., 223 F.3d 1082, 1086 (9th Cir. 2000).  This standard requires not only a showing of "substantial" or "continuous and systematic" contacts, but also reasonableness in requiring the defendant to defend itself in the forum state.  Amoco, 1 F.3d at 851 n.2 (citing Asahi Metal Indus. Co. v. Superior Court, 480 U.S. 102 (1987)).

Since January 2002 CSDI has sent bi-weekly paychecks and itemized wage reports to all of Lane Bryant's employees in California.  Camoratto Dec., ¶ 3.  The funds for these paychecks are drawn directly from CSDI's bank accounts in North Carolina.  Id.  CSDI also pays employment taxes to the state of California.  Sullivan Dec. ¶ 5.

CSDI argues that the provision of "administrative services" is not sufficient for jurisdiction.  CSDI then cites only one appellate case in support of this conclusion—Central States, Se. and Sw. Areas Pension Fund v. Reimer Express World Corp., 230 F.3d 934 (7th Cir. 2000).  This lone citation from the Seventh Circuit does not support such a conclusion, nor does it provide such a

4

broadly applicable holding. Although the Seventh Circuit adopted the following rule: "a corporate parent may provide administrative services for its subsidiary in the ordinary course of business," id. at 945, without subjecting itself to jurisdiction, it did not define the scope of administrative services. In Central States, the contacts were limited to a fax sent by the defendant and a fringe benefit agreement signed by an employee of the defendant. Id. Those facts do not compel that all administrative services are exempt from establishing jurisdiction. Indeed, the Central States court cautioned against creating a bright-line rule and stated that jurisdiction was a case-specific analysis. Id. at 943–44. The Central States court, however, did state that payroll services were not sufficient to constitute a minimum contact. Id. at 946. The payroll services it was discussing were contacts by Messel—an employee of ITCL's corporate great grandparent REE—who provided ITCL with payroll services that ITCL paid for. Id. at 938.

> In November 1992, the Fund received a fax from Linda Messel, whose position was listed as 'ICTL (Payroll).' The letterhead of the fax cover page read '[REE].' The attachments to this fax related to ICTL's obligation to remit contributions to the Fund. Prior to this fax, the Fund had received a fax from the same person with a cover page reading 'Reimer Express Lines,' which was a subsidiary of REE at the time.

Id. The Seventh Circuit declined to exert jurisdiction over REE based upon this correspondence. The characterization of this correspondence as payroll services does not automatically exclude all payroll services from the jurisdictional analysis. This is especially true when the defendant sends over a hundred thousand checks into the forum state over a term of multiple years. Thus, this court limits Central States to its facts.

Nevertheless, corporate relationships can sometimes lead to jurisdiction. While CSDI is correct that personal jurisdiction cannot be premised on corporate affiliation or stock ownership alone, a corporate relationship that extends beyond mere corporate affiliation—such as an agency or alter ego relationship—will suffice. Harris Rutsky, 328 F.3d at 1134–35 (finding that single act of inconsistency with corporate relationship was enough to allow for jurisdictional discovery). However, plaintiff has failed to put forth even a shred of evidence that any inconsistencies with an arms length corporate relationship exist between CSDI and Lane Bryant. Additionally, plaintiff has made no credible argument that such evidence exists or would be discoverable.[2] The same goes for

5

plaintiff's kitchen-sink approach of alleging that the relationship between Lane Bryant and CSDI is that of joint employer, agent-principal, parent-subsidiary, alter-ego, integrated enterprise, and co-conspirator.[3]  As such, all of these arguments are without merit.

It is clear that CSDI does not meet any of the factors for general personal jurisdiction outlined above.  Specifically, CSDI: 1) is not incorporated in—and has no physical presence in—California; 2) does not make sales in California; 3) does not solicit or engage in business in California; 4) does not serve the state's markets; 5) does not have a designated agent for service of process; and 6) does not hold a license in California.[4]

Furthermore, the Ninth Circuit has regularly declined to find general personal jurisdiction in cases where the contacts were more extensive than those in the instant action.  See Cubbage v. Merchent, 744 F.2d 665 (9th Cir. 1984) cert. denied, 470 U.S. 1005 (1985) (contacts included employing a small percentage of hospital employees who resided in California; advertising in white pages and yellow pages of a directory that was distributed in California; serving a small percentage of hospital patients that were California residents; holding California Medi-Cal numbers; treating Medi-Cal patients; and receiving reimbursement from the State of California for Medi-Cal treatment); Gates Learjet Corp. v. Jensen, 743 F.2d 1325 (9th Cir. 1984) cert. denied, 471 U.S. 1066 (1985) (contacts included several visits to and purchases within forum, solicitation of contract in forum which included choice of law provision favoring forum and extensive communication with forum); Shute v. Carnival Cruise Lines, 897 F.2d 377 (9th Cir. 1990) (rev'd on other grounds sub nom. Carnival Cruise Lines v. Shute, 499 U.S. 585 (1991)) (contacts with forum state included advertising in local media, mailing brochures and paying commissions to travel agents, conducting promotional seminars and selling vacation cruises to residents of the forum state).

In sum, based on the evidence presented, CSDI's contacts with California are insufficient to support general jurisdiction.

II.     Specific Jurisdiction

CSDI also asserts that it should not be subject to specific jurisdiction in this action because

6

its provision of administrative services is insufficient for the same. Plaintiff argues that CSDI is subject to specific jurisdiction for three reasons. Specifically, CSDI: 1) purposefully directs activities into California; 2) continues to direct fraudulent activities into California;[5] and 3) has previously waived jurisdiction in the California courts.[6] In the alternative, plaintiff seeks further discovery on this issue.

Specific jurisdiction exists if: 1) the defendant has performed some act or consummated some transaction within the forum or otherwise purposefully availed himself of the privileges of conducting activities in the forum; 2) the claim arises out of or results from the defendant's forum-related activities; and 3) the exercise of jurisdiction is reasonable. Bancroft, 223 F.3d at 1086. The first prong of this test requires that the defendant either purposefully avail itself of the privileges of conducting activities in the forum state or purposefully direct its activities toward the forum state. Schwarzenegger, 374 F.3d at 802. Typically, evidence of purposeful availment will include "action taking place in the forum that invokes the benefits and protections of the laws in the forum," while evidence of purposeful direction will include "action taking place outside the forum that is directed at the forum." Pebble Beach Co. v. Caddy, 453 F.3d 1151, 1155 (9th Cir. 2006).

Purposefully directed activities are analyzed under the Calder effects test. Calder v. Jones, 465 U.S. 783 (1984). The Ninth Circuit has interpreted Calder to impose three requirements. The defendant must have 1) committed an intentional act, 2) expressly aimed at the forum state, which 3) causes harm that the defendant knew was likely to be suffered in the forum state. Yahoo! Inc. v. La Ligue Contre Le Racisme et L'Antisemitisme, 433 F.3d 1199, 1206 (9th Cir. 2006) (citing Schwarzenegger, 374 F.3d at 803). It is important to consider the "extent of the defendant's contacts with the forum and the degree to which the plaintiff's suit is related to those contacts" because "[a] strong showing on one axis will permit a lesser showing on the other." Id. at 1210.

A.   Purposeful Availment/Purposeful Direction

In Haisten v. Grass Valley Med. Reimbursement Fund, Ltd., the Ninth Circuit upheld the district court's exercise of personal jurisdiction over an insurance fund set up in the Cayman Islands

1  to provide insurance for doctors in California. 784 F.2d 1392, 1395 (9th. Cir. 1986). Although the
2  insurance fund was incorporated in the Cayman Islands, where it: 1) maintained its sole office;
3  2) held directors meetings; 3) conducted all transactions and communications; and 4) maintained an
4  agent for the doctors, id. at 1395, the court found that the fund had purposefully directed its activities
5  at California by agreeing to insure California physicians against liability under California
6  malpractice law. Id. at 1398.

7  When CSDI began providing administrative and financial services to CSI's operating
8  subsidiaries, it affirmatively took on activities which would be directed at California. As in Haisten,
9  CSDI's administrative and financial services were for the benefit of California residents and subject
10 to California regulations. CSDI knowingly took on the burden of providing these so-called
11 administrative services to California residents on behalf of Lane Bryant, and CSDI has intentionally
12 and knowingly continued to send money, paychecks, itemized wage statements, and payroll taxes
13 into California since 2002.

14 Even though CSDI has engaged in limited activities in California, these activities are
15 sufficient to invoke specific jurisdiction. The Ninth Circuit has upheld jurisdiction over a
16 non-resident defendant that sent a single cease and desist letter to the plaintiff in the forum state.
17 Bancroft, 223 F.3d at 1084. The court stated that the single letter was sufficient to support
18 jurisdiction because the defendant acted intentionally with acts expressly aimed at California;
19 individually targeted the plaintiff, a California corporation doing business almost exclusively in
20 California; and primarily affected the plaintiff in California. Id. at 1088. However, the court later
21 limited that holding by clarifying that such limited contacts were sufficient because the defendant's
22 actions were a "clear attempt to force the plaintiff to act" in response to the letter. Pebble Beach,
23 453 F.3d at 1087 (discussing Bancroft).

24 Similarly, in Yahoo!, the Ninth Circuit found that two orders obtained by the defendant, an
25 organization located in France, from a French court directing Yahoo! to take actions in California
26 were sufficient, when taken in conjunction with a cease and desist letter, to exercise jurisdiction over
27 the defendant in California. 433 F.3d at 1211. Nevertheless, the court emphasized that the cease
28

8

and desist letter and service of process were not enough to establish jurisdiction. Id. at 1208. When the cease and desist letter and service of process were aggregated with the French court orders directing Yahoo! to take action in California, the contacts were only then sufficient because all of the contacts, though limited, were directly related to the claims brought by Yahoo!. Id. at 1210–11. In determining that jurisdiction was proper, the court noted that it was a "close question" and went on to note: "[t]he case before us is the classic polar case for specific jurisdiction described in International Shoe, in which there are very few contacts but in which those few contacts are directly related to the suit." Id.

Like the defendants in Bancroft and Yahoo!, CSDI has limited contacts with California. These limited contacts involve 1) intentional acts—sending money, paychecks, wage statements and payroll taxes into the state—which were 2) expressly aimed at California—CSDI knew it was sending these items to pay California residents and state taxes—and 3) the defendant knew these acts could result in harm to California residents if it underpaid them. CSDI has been sending paychecks into California since January 2002, so although the contacts are limited, the volume and frequency of CSDI's contacts with California are far greater than those in either Bancroft and Yahoo!. In addition, CSDI's own actions—sending paychecks—have subjected CSDI to regulation under California's labor laws, and CSDI has allegedly failed to comply with these requirements. As such, CSDI has forced plaintiff to act in response to these activities by filing suit.

Finally, Kyle v. CRW Affiliated P'ship and Agnello v. Paragon Dev. Ltd. are distinguishable because the plaintiffs' claims for relief there did not arise from the defendants' activities in the forum state. Kyle v. CRW Affiliated P'ship, No. IP01-0676-C-H/G, 2001 WL 899639, at *1–*3 (S.D. Ind. July 5, 2001); Agnello v. Paragon Dev. Ltd., No. 07-19E, 2008 WL 45260, at *5 (W.D. Pa. Jan. 2, 2008). In Kyle, the defendant's activities included issuing paychecks and other payroll services, while the dispute centered on an employment contract dispute. Similarly, in Agnello, the defendant issued paychecks and paid state taxes, while the dispute centered on an employment contract dispute. Aside from this significant difference, these two cases are from other district courts and therefore non-binding. In sum, this prong is met.

B.  Arising Out of or Resulting From[7]

In its opening brief, CSDI argues that there is no nexus between plaintiff's wage and hour claims and the services CSDI provides in California. For jurisdiction to exist, the instant action must arise out of or result from CSDI's contacts with California. Bancroft, 223 F.3d at 1088. Here, but-for CSDI's administration of the payroll services, plaintiff would not have brought this suit against CSDI alleging payroll violations and associated fraud. Because CSDI is responsible for administering the paychecks and wage statements for all of Lane Bryant's employees in California, plaintiff's wage and hour claims arise out of these services. Therefore, this requirement is met.

C.  Reasonableness[8]

The final requirement for specific jurisdiction is reasonableness. Id. The burden is on the defendant to put forth a compelling case that jurisdiction would be unreasonable, id., because a presumption of reasonableness arises once purposeful direction has been shown. Haisten, 784 F.2d at 1397. CSDI has not demonstrated any hardship or any other specific reason suggesting that jurisdiction in California would be unreasonable. Therefore, the presumption of reasonableness is not rebutted and CSDI is subject to specific personal jurisdiction in this court. Accordingly, CSDI's motion to dismiss for lack of personal jurisdiction is DENIED.

CONCLUSION

For the foregoing reasons, CSDI's motion to dismiss is DENIED.

IT IS SO ORDERED.

Dated: February 27, 2008

MARILYN HALL PATEL
United States District Court Judge
Northern District of California

# ENDNOTES

1. Plaintiff filed an amended complaint on January 18, 2008. Plaintiff's amended complaint added Lane Bryant, Inc. and Charming Shoppes, Inc. as defendants. All allegations in this order refer to those in the amended complaint. Additionally, "Complaint" denotes the Amended Complaint filed on January 18, 2008.

2. While plaintiff fails to put forth evidence that would prove any of the corporate relationship bases alleged for jurisdiction, thereby settling the issue, CSDI alleges proper corporate conduct through completely self-serving declarations. While this was not determinative, the court notes that CSDI failed to put forth any declarations from Lane Bryant verifying the separation of operations and control between the two sister corporations.

3. Since the court is dismissing all these theories, it is unnecessary to identify which ones are applicable in the jurisdictional analysis.

4. It is unknown whether CSDI has a state of California Employer Identification number.

5. Plaintiff asserts that CSDI's alleged violation of California Labor Code section 226 creates personal jurisdiction because CSDI is directing fraudulent activities into California by sending paychecks to Lane Bryant employees purporting to be the employer. Because this allegation is based on the same set of facts as the wage claims, the court's specific jurisdiction analysis with respect to this issue is identical to that which follows.

6. Plaintiff erroneously argues that because CSDI previously waived jurisdiction in the Los Angeles Superior Court and submitted to its jurisdiction for purposes of the settlement agreement, CSDI has perpetually agreed to jurisdiction in California. This is wrong as a matter of law. See Calvert v. Huckins, 875 F. Supp. 674, 677–78 (E.D. Cal. 1995) (corporation that had been sued five separate times in California courts, and even filed suit in California, was not deemed to have waived jurisdiction). A waiver of personal jurisdiction is action-specific and even if not, it would not apply in this court because the waiver occurred in Superior Court. Because this argument is wrong as a matter of law, this court need not further address this issue.

7. Both parties have failed to distinguish between specific and general jurisdiction in their respective briefs. Though CSDI acknowledges the distinction in its opening brief, it completely failed to carry over the distinction into its reply brief. As such, CSDI's arguments regarding the "arising out of" requirement for specific jurisdiction are limited to less than a paragraph in the opening brief. Plaintiff, who briefly mentioned the purposeful direction requirement, fails to even acknowledge the nexus requirement. As such, this court's analysis is substantially and significantly limited.

8. See id.