PETER M. HART, Esq. (State Bar No. 198691)
**LAW OFFICES OF PETER M. HART**
13952 Bora Bora Way, F-320
Marina Del Rey, CA 90292
Telephone: (310) 478-5789
Facsimile: (509) 561-6441
hartpeter@msn.com

KENNETH H. YOON (State Bar No. 198443)
**LAW OFFICES OF KENNETH H. YOON**
One Wilshire Blvd., Suite 2200
Los Angeles, CA 90017
(213) 612-0988
(213) 947-1211 facsimile
kyoon@yoon-law.com

LARRY W. LEE (State Bar No. 228175)
CRAIG S. HUBBLE (State Bar No. 200789)
**DIVERISTY LAW GROUP, A Professional Corporation**
444 S. Flower Street, Suite 1370
Los Angeles, CA 90071
(213) 488 – 6555
(213) 488 – 6554 facsimile
lwlee@diversitylaw.com

Attorneys for Shameika Moody

## UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHAMEIKA MOODY as an individual and on behalf all of others similarly situated,<br><br>　　　　　Plaintiff,<br>　　vs.<br><br>CHARMING SHOPPES OF DELAWARE, INC., a corporation; and DOES 1 through 50, inclusive,<br><br>　　　　　Defendants. | Case No.: C 07-06073 MHP<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT CHARMING SHOPPES, INC.'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION PURSUANT TO F.R.C.P. RULE 12(B)(2).**<br><br>**[CONCURRENTLY FILED DECLARATIONS OF CRAIG S. HUBBLE AND LARRY W. LEE]**<br><br>JUDGE:　　HON. MARILYN HALL PATEL<br>DATE:　　　MAY 5, 2008<br>TIME:　　　2:00 p.m.<br>COURTROOM: 15 |

1

# TABLE OF CONTENTS

2

PAGE

I.    INTRODUCTION                                                                     5

II.   PROCEDURAL BACKGROUND                                                            6

III.  RELEVANT JURISDICTIONAL FACTS                                                    7

      A.  CSI Employs All Of The Individuals Who Work In Its Retail Store            8
          Locations

      B.  CSI Owns And Operates All Of Its Retail Store Locations                    11

      C.  CSI Participates In The Day-To-Day Management Of Its Retail Divisions       12

      D.  CSI's organizational structure requires that the personnel in its various  14
          divisions directly report to personnel in CSI's Pennsylvania headquarters

      E.  CSI Has Operations And Employees In California Apart From Its Retail        15
          Stores

IV.   APPLICABLE LEGAL STANDARDS                                                     16

V.    ARGUMENT                                                                       18

      A.  The Court Possesses General Jurisdiction Over CSI                          18

          1.  CSI has substantial, continuous and systematic contacts with          18
              California sufficient for the exercise of general jurisdiction

          2.  CSI cannot establish that the exercise of general jurisdiction in this 20
              action would be unreasonable

      B.  The Court Possesses Specific Jurisdiction Over CSI                         21

          1.  CSI has purposefully directed actions within California                21

          2.  The purposeful conduct of CSI's incorporated divisions must be        21
              imputed to CSI for purposes of determining specific jurisdiction.

          3.  Plaintiff's claims arise out of the forum-related conduct             23

          4.  CSI cannot establish that the exercise of specific jurisdiction in this 24
              action would be unreasonable

      C.  Plaintiff Should Be Permitted Further Discovery On Jurisdictional Issues   24

VI.   CONCLUSION                                                                     25

1

**TABLE OF AUTHORITIES**

2

**PAGE(S)**

3

**CASES**

4

*Amoco Egypt Oil Co. v. Leonis Navigation Co.*, 1 F.3d 848 (9th Cir. 1993)    17

5

*AT&T v. Compagnie Bruxelles Lambert*, 94 F.3d 586 (9th Cir. 1996)    18

6

*Ballard v. Savage*, 65 F.3d 1495 (9th Cir. 1995)    17, 18, 21, 23

7

*Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082 (9th Cir. 2000)    17, 19, 20

8

*Bellomo v. Pennsylvania Life Co.*, 488 F. Supp. 744 (S.D.N.Y. 1980)    23

9

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985)    20, 24

10

*Concat LP v. Unilever*, PLC, 350 F. Supp.2d 796 (N.D. Cal. 2004)    21, 22

11

*Covad Communications Co. v. Pacific Bell*, 1999 U.S. Dist. LEXIS 22789 (N.D. Cal. December 14, 1999)    19

12

13

*Cybersell v. Cybersell*, 130 F.3d 414 (9th Cir. 1997)    17

14

*Data Disc, Inc. v. Systems Tech. Assocs., Inc.*, 557 F.2d 1280 (9th Cir. 1977)    24

15

*DeMelo v. Toche Marine, Inc.*, 711 F.2d 1260 (5th Cir. 1983)    24

16

*Doe, I v. Unocal Corp.*, 248 F.3d 915 (9th Cir. 2001)(per curiam)    18, 22

17

*Gator.com Corp. v. L.L. Bean, Inc.*, 341 F.3d 1072 (9th Cir. 2003)    17, 18

18

*Harris Rutsky & Co. Ins. Services, Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122 (9th Cir. 2003)    16, 17, 21

19

20

*Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945)    17

21

*IO Group, Inc. v. Pivotal, Inc.*, 2004 U.S. Dist. LEXIS 6673 (N.D. Cal. April 19, 2004)    16, 17, 18

22

23

*Lake v. Lake*, 817 F.2d 1416 (9th Cir. 1987)    21

24

*Moody v. Charming Shoppes of Delaware, Inc.*, 2008 U.S. Dist. LEXIS 14759 (N.D. Cal. February 27, 2008)    7, 17, 20

25

26

*Paneno v. Centres for Academic Programmes Abroad Ltd.* (2004) 118 Cal. App. 4th 1447    23

27

28

*Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437 (1952).    17

*Roth v. Garcia Marquez*, 942 F.2d 617 (9th Cir. 1991)    20, 24

*Sher v. Johnson*, 911 F.2d 1357 (9th Cir. 1990)    17, 21

*Shute v. Carnival Cruise Lines*, 897 F.3d 377 (9th Cir. 1990)    23

*The Flintkote Co. v. General Accident Assurance Co. of Canada*, 2004 U.S. Dist.    17, 18, 24
        18192 (N.D. Cal. September 7, 2004)

*Tuazon v. R.J. Reynolds Tobacco Co.*, 42 F.3d 1163 (9th Cir. 2006)    18, 19

*Virtualmagic Asia, Inc. v. Fil-Cartoons, Inc.* (2002) 99 Cal. App. 4th 228    23

*Vons Cos., Inc. v. Seabest Foods, Inc.* (1996) 14 Cal. 4th 434    17

*Ziegler v. Indian River County*, 64 F.3d 470 (9th Cir. 1995)    17, 23

## **STATUTES**

<u>California Authorities</u>

Wage Orders promulgated by the Industrial Welfare Commission at Section 2, 8    18, 19
        CCR §11090(2)(F)

<u>Federal Authorities</u>

FRCP 12(b)(2)    5

29 U.S.C. §203(d)    19

PLAINTIFF'S OPPPOSITION TO DEFENDANT'S MOTION TO DISMISS
C 07-06073 MHP

**OPPOSITION TO MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

**I.**

**INTRODUCTION**

Plaintiff Shameika Moody ("Plaintiff") hereby submits this Opposition ("Opposition") to Defendant Charming Shoppes, Inc.'s ("Defendant" or "CSI") Motion to Dismiss for Lack of Personal Jurisdiction pursuant to FRCP 12(b)(2) ("Motion to Dismiss").

Despite the fact that she has not been permitted discovery to date, Plaintiff has uncovered an abundance of evidence that not only contradicts the conclusory declarations submitted by CSI, but also establishes that this Court has personal jurisdiction over CSI.

Contrary to the assertion throughout CSI's Motion to Dismiss that it is simply a "holding company," CSI has routinely and continually represented to its shareholders and the investing public that it is a "multi-brand, multi-channel retailer" that "*operates*" over 2,400 retail in 48 states "under the names" Lane Bryant, Fashion Bug and Catherines, among others, including over 175 retail locations in California. CSI readily admits in SEC filings, on its website, and in press releases that the 30,000+ employees of its various retail brands are *employees of CSI*, and CSI provides a wide array of benefits to such employees at its own expense, as well as an employee stock purchase plan pursuant to which shares of CSI can be purchased through payroll deductions. Potential employees are instructed to complete an application entitled "*CHARMING SHOPPES, INC. EMPLOYMENT APPLICATION*," checking a box indicating with which of CSI's "divisions" the applicant seeks employment, including Charming Corporate, Lane Bryant, Fashion Bug, Lane Bryant Outlet and Catherines. In fact, the handbook provided to associates at Lane Bryant stores indicates that CSI is their employer.

CSI also is actively involved in the day-to-day operations of its retail divisions. CSI's materials demonstrate that it is involved in such operational decisions as store payroll hours, inventory management, employee compensation, marketing, store closings, the elimination of employee positions, loss prevention, the identification and acquisition of new store locations and capital budgets.

In sum, *CSI is the employer of the individuals who work in its 175+ California retail stores*, including its Lane Bryant, Fashion Bug, Catherines, Petite Sophisticate and Lane Bryant Outlet stores.

1    Setting aside the thousands of employees in its retail store locations, CSI not only employs

2    additional personnel in California, but also actively recruits potential employees for positions within

3    California via its website.  In addition, CSI maintains a facility, with a telephone listing, in California.

4    Even assuming that CSI somehow can refute the proliferation of admissions within its own

5    securities filings, on its website and in its press releases, CSI's involvement in the day-to-day

6    operations of its incorporated retail divisions mandates that their activities and presence in California

7    be imputed to CSI for jurisdictional purposes.

8    CSI's Motion to Dismiss is wholly without merit and was filed solely for purposes of

9    harassment and delay.  Not only was all of the information cited herein well-within CSI's possession,

10    custody and control prior to its filing of this frivolous motion, but counsel for Plaintiffs' specifically

11    apprised counsel for CSI that the assertions made herein appeared to conflict with CSI's own

12    securities filings and the Lane Bryant handbook.[1]  Indeed, CSI's Motion to Dismiss is sanctionable

13    under Federal Rule of Civil Procedure 11.

14    The Court should deny CSI's Motion to Dismiss in its entirety.

**II.**

**PROCEDURAL BACKGROUND**

17    As detailed in response to the unsuccessful motion to dismiss previously filed in this action by

18    defendant Charming Shoppes of Delaware, Inc. ("CSDI"), Plaintiff Shameika Moody was employed

19    as an hourly paid employee in a Lane Bryant retail store in San Francisco, California.  (First Amended

20    Complaint, ¶ 11.)  Plaintiff alleges that, like the other putative class members, she was required to

21    work through meal breaks and was not properly compensated for overtime wages.  (First Amended

22    Complaint, ¶¶ 11, 36-40, 44-46 and 48-53.)

---

[1] Such conduct by CSI and its counsel is no different than the prior jurisdictional challenge of defendant CSDI, wherein CSDI argued that it was only acting as a "payroll" service (such as ADP) for LBI and the other divisions within CSI.  (Declaration of Larry W. Lee ("Lee Dec."), ¶ 2.)  Subsequent to this Court's denial of CSDI's prior Motion to Dismiss, Plaintiff has discovered that ADP was in fact, the actual payroll company used to process Plaintiff's payroll, not CSDI.  (Lee Dec., ¶ 3, Ex. 1.)  CSDI could not have been a "payroll" service as it claimed, due to the fact that ADP was the actual payroll service being used.  (Lee Dec., ¶ 4.)

1    While her Complaint originally named only CSDI – the entity that was named on the pay stubs

2    and wage statements provided to Plaintiffs – Plaintiff filed a First Amended Complaint on or about

3    January 18, 2008, naming CSI and Lane Bryant, Inc. ("LBI") as additional defendants.  (Declaration

4    of Craig S. Hubble ("Hubble Dec."), ¶ 2.)

5    On or about February 11, 2008, the Court conducted a hearing upon CSDI's motion to dismiss

6    the claims against it, in which CSDI asserted that it was not Plaintiff's employer and was not subject

7    to personal jurisdiction in California.  Finding instead that Plaintiff's claims sufficiently arose out of

8    CSDI's forum-related activities – which included administering all paychecks and wage statements for

9    employees at Lane Bryant stores in California – the Court denied CSDI's motion in an opinion issued

10    February 27, 2008.  *See Moody v. Charming Shoppes of Delaware, Inc.*, 2008 U.S. Dist. LEXIS 14759

11    (N.D. Cal. February 27, 2008).

12    Approximately one month later, CSI filed the present motion, similarly asserting that LBI, not

13    CSI, was in fact Plaintiff's employer and that CSI was not subject to personal jurisdiction in

14    California.

### III.

### RELEVANT JURISDICTIONAL FACTS

17    In its Motion to Dismiss and conclusory supporting declarations, CSI claims that it is nothing

18    more than a "holding company" that does business only through its separate and distinct wholly

19    owned subsidiaries.  (Sullivan Dec., ¶¶ 3, 8.)  Mr. Sullivan, CSI's Senior Vice President and

20    Controller, further declares under oath that CSI does not exert any managerial control over the

21    operations of LBI, but instead – consistent with its status as an investor – only elects board of director

22    members.  (Sullivan Dec., ¶ 8.)

23    As a means of supporting Mr. Sullivan's conclusory statements, CSI also submits the equally

24    conclusory and skeletal declaration of Elizabeth Ackley, the Vice President of Human Resources for

25    LBI.  Ms. Ackley declares that all Lane Bryant stores in California are "owned and operated" by LBI;

26    that all employees in such stores are "employed" by LBI and that the business operations of such

27

28

1   stores are "directed and managed" by the LBI management team.[2]  (Ackley Dec., ¶ 3.)

2       The conclusory sworn testimony of Mr. Sullivan and Ms. Ackley is directly rebutted by

3   numerous securities filings made by CSI,[3] press releases issued by CSI and the representations made

4   on CSI's own website.

5   **A.    CSI Employs All Of The Individuals Who Work In Its Retail Store Locations**

6       CSI has repeatedly represented that *all* of the sales associates and other employees at its

7   various retail store and other locations are employees of CSI.

8       In its Form 10-K Annual Report filed with the SEC on April 2, 2008 – only two (2) days after

9   the filing of the present Motion to Dismiss – CSI expressly represents:

> As of the end of Fiscal 2008 *we employed approximately 30,200*
> *associates*, which included approximately 19,900 part-time employees.
> In addition, *we hire* a number of temporary employees during the
> December holiday season.  Approximately 80 of *our employees* are
> represented by unions whose contracts are currently due to expire in
> August 2009.  We believe that *our overall relationship with* these
> unions and *our employees* in general is satisfactory.

14  (Hubble Dec., ¶ 3, Ex. A at p. 12.) (emphasis added.)

15      In its 2006 Annual Report, CSI specifically represented that it had "30,000 *Charming Shoppes*

16  *associates* worldwide."  (Hubble Dec., ¶ 4, Ex. B at p. 17.) (emphasis added.)

17      Similarly, on its website, www.charming.com, CSI provides a "Company Overview,"

18  highlighting CSI's history and describing its core brands.  (Hubble Dec., ¶ 14.)  Under the heading

19  "Associates," CSI again states "*Charming Shoppes, Inc. employs approximately 30,000 associates*."

20  (Hubble Dec., ¶ 14, Ex. L.) (emphasis added.)  On another page of its website, CSI plugs it

21  commitment to fostering a diverse culture "among *our more than 30,000 associates* across the

22  country."  (Hubble Dec., ¶ 14, Ex. M.) (emphasis added.)

23

24

---

25  [2] Ms. Ackley does not explain how, in her role in Human Resources, she is competent to testify as to
26  the management of LBI's "business operations."

27  [3] Indeed, if the submitted testimony of Mr. Sullivan and Ms. Ackley is true, CSI essentially admits to
    wide spread material misrepresentations and substantial securities violations.

28

1       Furthermore, representations are made throughout the handbook provided to associates in Lane

2   Bryant stores that not only indicate that CSI is their employer, but also directly rebut Ms. Ackley's

3   sworn testimony that "Lane Bryant has its own employee handbook and personnel policies."  (Hubble

4   Dec., ¶ 6, Ex. D; Ackley Dec., ¶ 5.)  Indeed, one need look no further than the ***first page*** of the

5   handbook[4] to see CSI's direct control of the terms of employment, as the handbook expressly states:

6   > Nothing in this book or any other document not approved as a contract
   > by the Chairman of the Board or the Executive Vice President of Human

7   > Resources ***at Charming Shoppes, Inc.***, is to be construed as creating a
   > contract or term of employment."

8   (Hubble Dec., Ex. D at p. 1.) (emphasis added.)

9       The handbook contains numerous other statements that portray Lane Bryant as nothing more

10  than a "brand" or "division" within CSI and that indicate that CSI is the individual's employer.

11  (Hubble Dec., Ex. D at p. 6 ("Lane Bryant is ***owned*** by Charming Shoppes, Inc., a family of ***brands*** . .

12  .".) (emphasis added); p. 8 (characterizing Lane Bryant's Columbus, Ohio headquarters as a

13  "Divisional office[]"); p. 9 (detailing CSI's expectations for its associates).  The handbook further

14  directing employees to contact "***CSI*** Benefits On Call" for questions concerning payroll, W-2 re-issue,

15  employment verification and other benefits questions and describes CSI's ethical standards, providing

16  a "hotline" number for employees, which, when called, indicates that it "has been set up for ***employees***

17  ***of Charming Shoppes.***"  (Hubble Dec., ¶ 29, Ex. D at p. 20, 40.) (emphasis added).  Given these

18  representations, perhaps it is not surprising that – although she references and relies upon the

19  handbook in her declaration – Ms. Ackley failed to attach a copy.

20      CSI's website provides a wealth on information for potential job applicants, as well, featuring a

21  section entitled "Career Center."  (Hubble Dec., ¶ 18.)  On its "Career Opportunities" page, CSI

22  instructs potential employees interested in a position in one of CSI's 2,400+ retail stores to print and

23  complete an employment application, a PDF version of which is linked on the website, then "bring

24  [the] completed application" to the nearest CSI brand store.  (Hubble Dec., ¶ 18, Ex. N.)  The

---

[4] Plaintiff has provided the entire handbook, which previously was absent from the record.  (Hubble
Dec., Ex. D.)

PLAINTIFF'S OPPPOSITION TO DEFENDANT'S MOTION TO DISMISS
C 07-06073 MHP

employment application bears CSI's logo at the top of the page, and lists CSI's various brand names at the bottom, including Lane Bryant, Fashion Bug and Catherines.  (Hubble Dec., ¶ 19, Ex. O.)  Significantly, the document is entitled "CHARMING SHOPPES, INC. EMPLOYMENT APPLICATION."  (Hubble Dec., ¶ 19, Ex. O.)  Before completing the required personal information, the applicant is asked to check their "DIVISION OF CHOICE," including "Charming Corporate," "Lane Bryant," "Lane Bryant Outlet," "Fashion Bug," "Catherines," and "Petite Sophisticate," among others.  (Hubble Dec., ¶ 19, Ex. O.)

The "Career Center" section of CSI's website also contains detailed information about the substantial benefits provided by CSI to its employees.  (Hubble Dec., ¶ 20, Ex. P.)  These benefits include, among others:

- a health plan available to full-time associates in a "shared-cost arrangement, **with the company absorbing the majority of the cost**;"
- life, accidental death and dismemberment and short-term disability insurance, "all paid for **by Charming Shoppes**;" and
- the ability to participate in a 401(k) program and/or "an excellent **employee** stock purchase plan via easy **payroll deductions**."

(Hubble Dec., ¶ 20, Ex. P.) (emphasis added.)

Finally, CSI's treatment of **all** of the sales associates in its various retail stores as its own employees is further reflected in correspondence/memorandum to such employees that was recently filed with the SEC.  In a Form 8-K Report of Unscheduled Material Events or Corporate Changes filed with the SEC on or about February 6, 2008, CSI provided a copy of not only a press release related to its efforts to streamline operations, but also a "Letter to Employees dated February 5, 2008."  (Hubble Dec., ¶ 5, Ex. C at p. 1 and Ex. 99.1 and 99.2 thereto.)  The letter – entitled "CSI CORPORATE ANNOUNCEMENT" is addressed to all "Associates" regardless of the store brand or division within which they work.  (Hubble Dec., Ex. C, Ex. 99.2 thereto.)  The letter, which appears designed to alleviate concerns among CSI's employees, addresses not only changes in executive management at CSI, but also discusses CSI's decision to close 150 "unprofitable store locations . . . includ[ing] about 100 Fashion Bug locations, 40 Lane Bryant stores and 10 Catherines stores."  (Hubble Dec., Ex. C, Ex. 99.2 thereto.)

**B.     CSI Owns And Operates All Of Its Retail Store Locations**

In its 2008 10-K Annual report, CSI does not characterize itself as a "holding company" as it would lead the Court to believe, but instead states that it is:

> "a ***multi-brand***, multi-channel specialty apparel ***retailer***, with a leading market share in women's plus-size specialty apparel.  Our Retail Stores segment operates retail stores, and related E-commerce websites under the following ***distinct names***: LANE BRYANT, LANE BRYANT OUTLET, FASHION BUG, CATHERINES PLUS SIZES, PETITE SOPHISTICATE, and PETITE SOPHISTICATE OUTLET. . . . As of February 2, 2008, ***we operated*** 2,409 stores in 48 states."

(Hubble Dec., Ex. A at p. 1.) (emphasis added.)

This theme is repeated throughout CSI's 2008 10-K Annual Report, as CSI refers to "[o]ur 2,409 retail stores" and specifically states that "[a]ll retail stores ***are operated under our direct management***." (Hubble Dec., Ex. A at p. 2, 4.) (emphasis added.)  At no point, does CSI state that it is a mere holding company or investor in a series of separate and distinct corporations such as LBI, or that these other corporations, including LBI, manage themselves completely independent of CSI.  (*See* Sullivan Dec., ¶¶ 3, 8; Ackley Dec., ¶ 3.)

In fact, CSI has represented in press releases time and again that it owns and operates all of the Lane Bryant, Fashion Bug and Catherines retail locations,[5] among others.

For example, after the tragic shooting in a Lane Bryant store in Tinley Park, Illinois, claimed the lives of five women, Lane Bryant issued a press release offering sympathy to their families. (Hubble Dec., ¶ 7, Ex. E.)  The press release concludes by stating that "***Lane Bryant is owned and operated by Charming Shoppes, Inc.***"  (Hubble Dec., ¶ 7, Ex. E.) (emphasis added.)

Similarly, a March 13, 2008 press release issued by CSI states "Charming Shoppes, Inc. ***operates*** 2,410 retail stores in 48 states ***under the names*** LANE BRYANT(R), FASHION BUG(R), FASHION BUG PLUS(R), CATHERINES PLUS SIZES(R), LANE BRYANT OUTLET(R),

---

[5] According to its website, CSI currently has at least ***175*** retail stores in California, including 90 Lane Bryant, 45 Fashion Bug, 36 Catherines Plus Sizes and 4 Petite Sophisticate.  (Hubble Dec., ¶ 21, Ex. Q.)  In addition, there appear to be at least 11 Lane Bryant Outlet stores in California.  (Hubble Dec., ¶ 21, Ex. R.)

PETITE SOPHISTICATE(R) and PETITE SOPHISTICATE OUTLET(R)."  (Hubble Dec., ¶ 8, Ex. F.) (emphasis added.)  Virtually identical language – with the only potential change being the number of stores – has been used by CSI in a multitude of press releases, including, but not limited to, a June 25, 2007 press release concerning the promotion of LBI's current President, LuAnn Via, to her current position, a March 19, 2008 press release announcing CSI's fourth quarter results, and an April 2, 2008 press release – issued two (2) days after the filing of CSI's Motion to Dismiss – concerning CSI's mailing of definitive proxy materials.  (Hubble Dec., ¶¶ 10-12, Ex. H-J.)

        As with CSI's admission that it is the employer of all personnel in its various retail locations, CSI's other securities filings and press releases, along with its website, constantly refer to CSI's approximately 2,400 stores in 48 states, describing such stores not as separate and distinct corporations, but as CSI's "brands."  (Hubble Dec., Ex. B at p. 10 (referring to CSI's 2,378 stores and various "brands"); ¶ 15, Ex. L (asserting that CSI is "the parent company of four distinct brands" and describing CSI's "Core Brands".)

        The fact that LBI and CSI's other wholly owned divisions are nothing more than "brands" under CSI's umbrella is further reflected in the fact that CSI, not these individual entities, owns the domain names and maintains such websites as lanebryant.com, fashionbug.com and catheirnes.com.  (Hubble Dec., ¶ 16, Ex. L.)  Moreover, when an individual goes to the website for one of CSI's separate brands stores, the individual is taken to *CSI's* website.  (Hubble Dec., ¶ 16.)

**C.    CSI Participates In The Day-To-Day Management Of Its Retail Divisions**

        Assuming that CSI can rebut the substantial evidence that it owns and operates all of the retail stores under its key brand names, overwhelming evidence contained within CSI's securities filings, press releases and website demonstrates that – contrary to CSI's submitted sworn testimony – CSI is intimately and extensively involved in nearly every aspect of the day-to-day operations of its retail divisions.

        Indeed, as it specifically relates to this litigation, CSI's key initiatives for the coming fiscal year, according to its 2008 10-K Annual Report, include continuing its efforts "to selectively *reduce store payroll hours*."  (Hubble Dec., Ex. A at p. 41.) (emphasis added.)

1    CSI has submitted securities filings and issued a variety of press releases detailing the actions

2   that CSI initiated in 2007 in response to its poor operational and financial performance.  CSI reviewed

3   these initiatives in the definitive proxy materials that it forwarded to its shareholders earlier this month

4   in an attempt to stave off alleged dissident shareholders.  (Hubble Dec., ¶ 12, Ex. J.)

5    According to CSI, its Board and management team identified and closed 150 underperforming

6   stores,[6] which included approximately 100 Fashion Bug locations, 40 Lane Bryant stores and 10

7   Catherines stores.  (Hubble Dec., Ex. J; *see also* Ex. C, Ex. 99.2 thereto; Ex. I; Ex. K.)  CSI also

8   claims that its Board and management team "[t]ightened inventory levels . . . reducing same store

9   inventories."  (Hubble Dec., Ex. J; *see also* Ex. C, Ex. 99.1 thereto; Ex. I; Ex. K.)  CSI also claims the

10  Board and management team was responsible for the elimination of "approximately 200 full-time

11  corporate and field management positions."[7]  (Hubble Dec., Ex. J.)

12   Moreover, among the various areas of centralized operation that CSI oversees are:

13   - the determination of wages and compensation for its employees (Hubble Dec., Ex. P at
       p. 2; EX. S at p.1.);

14   - loss prevention (Hubble Dec., Ex. T at p. 3.);

15   - finance, including credit, budgeting, auditing and payroll functions (Hubble Dec., Ex. T
16       at p. 1.);

17   - logistics/distribution of merchandise from CSI's two distribution centers[8] (Hubble
       Dec., Ex. T at p. 1.);

18   - customer service (Hubble Dec., Ex. T at p. 1.);

19   - the identification, negotiation for and securing appropriate sites for CSI's store
       locations (Hubble Dec., Ex. T at p. 2.);

20
21   - the design and construction of the interior of CSI's retail stores (Hubble Dec., Ex. T at
       p. 2.); and

22
_____

23  [6] In addition to the store closings, CSI significantly slowed its plans for new store openings.  (Hubble
24  Dec., Ex. A at p. 4; Ex. C, Ex. 99.1 and 99.2 thereto; Ex. I; Ex. K.)

25  [7] Other press releases place the number of eliminated positions at approximately 150, or 13% of the
    total corporate and filed management positions.  (Hubble Dec., Ex. C, Ex. 99.1 thereto; Ex. I.)

26  [8] CSI operates one distribution center that services CSI's Lane Bryant and Catherines stores, and
    another that services CSI's Fashion Bug, Lane Bryant Outlet, Petite Sophisticate and Petite
27  Sophisticate Outlet stores.  (Hubble Dec., Ex. A at p. 7.)

28

- 13 –
PLAINTIFF'S OPPPOSITION TO DEFENDANT'S MOTION TO DISMISS
C 07-06073 MHP

- marketing (Hubble Dec., ¶ 9, Ex. G.)

Simply put, these are far from the activities of a mere investor.

## D.    CSI's Organizational Structure Requires That The Personnel In Its Various Divisions Directly Report To Personnel In CSI's Pennsylvania Headquarters

As opposed to a holding company that does little more than invest in its subsidiaries and elect an occasional board member as portrayed in the declarations it has submitted, CSI has established an organizational structure under which the various departments and executives within its brands have direct reporting accountability to CSI's Bensalem, Pennsylvania headquarters.

For example, although Ms. Ackley avers that LuAnn Via directs LBI as its President, CSI issued a press release on June 25, 2007, noting Ms. Via's "promotion" from President of CSI's Catherine's brand to her current position as "Group Divisional President."  (Hubble Dec., Ex. H.)  CSI goes on to note that, in such role, Ms. Via will be "*reporting* to Dorritt J. Bern, Chairman, CEO and President of Charming Shoppes, Inc."  (Hubble Dec., Ex. H.) (emphasis added.)

Similarly, in a November 14, 2007 press release, CSI announced the creation of a Corporate Marketing Group and the promotion of Tim White to the position of Executive Vice President and Chief Marketing Officer of CSI.  (Hubble Dec., Ex. G.)  Like Ms. Via, Mr. White reported directly to Ms. Bern.  (Hubble Dec., Ex. G.)

In his new role, Mr. White was charged with overseeing "the strategic direction of marketing for Charming Shoppes' retail brands."  (Hubble Dec., Ex. G.)  CSI further announced

> The Corporate Marketing Group will service the Company's Lane Bryant, Fashion Bug, Catherines Plus Sizes, and Outlet businesses in functional areas such as production, media buying, customer relationship management, and database marketing. Each of the Company's retail businesses will have *dedicated brand managers* who will have *functional reporting accountability* to the consolidated group in Bensalem.

(Hubble Dec., Ex. G.) (emphasis added.)

In fact, CSI's 2008 10-K Annual Report set forth detailed information regarding the structure of CSI's retail stores, conveying that each store has a manager and assistant manger, with their performance supervised by a district manager, who was responsible for an average of 12 stores.

1    (Hubble Dec., Ex. A at p. 4.)  The district managers, in turn, report to regional managers, who report

2    to the Vice President of Stores.  (Hubble Dec., Ex. A at p. 4.)

3           This hierarchy is further reflected in the Corporate Announcement forwarded to all associates

4    and submitted as part of CSI's February 6, 2008 8-K filing.  (Hubble Dec., Ex. C.)  In her

5    announcement, Ms. Bern notes that Joe Baron was assuming responsibility for leadership of the

6    Fashion Retail Group on an interim basis.  (Hubble Dec., Ex. C.)  Ms. Bern then goes on to detail the

7    various executives from CSI's divisions that will be reporting to Mr. Baron, including executives form

8    CSI's various retail divisions.  (Hubble Dec., Ex. C.)

9           Consistent with Ms. Via's "promotion" from President of the Catherines brand to Group

10   Divisional President, CSI declares on its website that it not only allows, but encourages employees to

11   transfer within its various divisions.  (Hubble Dec., ¶ 22, Ex. S.)  CSI states that it encourages its

12   associates to "explor[e] career options across the corporation"  (Hubble Dec., ¶ 22, Ex. S.)  Unlike a

13   neutral holding company or mere investor, CSI adds that, it "promote[s] from within whenever

14   possible, and our multiple brands provide many opportunities for associates to explore."  (Hubble

15   Dec., ¶ 22, Ex. S.)

16   **E.     CSI Has Operations And Employees In California Apart From Its Retail Stores**

17          In addition to its substantial ties to California through its operation of at least 175 retail store

18   locations and employment of all individuals who work therein, CSI's website reflects that it has

19   additional facilities and employees in California.

20          The "Career Center" section of CSI's website also features the ability to search "current job

21   openings."  (Hubble Dec., ¶ 24.)  A potential employee can search by position, brand or location.

22   (Hubble Dec., ¶ 24.)

23          A search for all available positions within California revealed not only potential opportunities

24   in CSI's retail locations, but also a position for a Quality Control Inspector in Charming Shoppes

25   Santa Fe Springs, California[9] facility.  (Hubble Dec., ¶ 24, Ex. U.)  The ad states that CSI is

26   _____

27   [9] Santa Fe Springs is a centralized location for the textile and apparel industry in a suburb of Los
     Angeles, California.  (Hubble Dec., ¶ 24.)

28

PLAINTIFF'S OPPPOSITION TO DEFENDANT'S MOTION TO DISMISS
C 07-06073 MHP

"searching for a Quality Control Inspector for *our inspection facility in Santa Fe Springs, CA*." (Hubble Dec., ¶ 24, Ex. U.) (emphasis added.)

After clicking on the "Apply Online" tab, a potential employee is directed to another page that not only contains the exact same language, but also specifically identifies the "Division" within which the position operates as "Charming Shoppes." (Hubble Dec., ¶ 25, Ex. V.) In addition, a virtually identical ad was posted on the careerbuilder.com website, identifying the company/employer as "Charming Shoppes" and referencing the CSI inspection facility in Santa Fe Springs, California. (Hubble Dec., ¶ 26, Ex. W.)

A subsequent search of the yellowbook.com website, operated by AT&T, revealed that "Charming Shops Quality Control" is located at 12816 Shoemaker Ave., in Santa Fe Spring, California. (Hubble Dec., ¶ 27, Ex. X.) The listed telephone number for the facility is (562) 404-7780. (Hubble Dec., ¶ 27, Ex. X.) The 562 area code has been assigned for use in Southern California. (Hubble Dec., ¶ 27.)

Calls placed after business hours are greeted by an automated message, which states:

> Hi. You have reached *Charming Shoppes'* inspection team. Please leave a brief message, and we will call you back as soon as possible. Thank you."

(Hubble Dec., ¶ 28.)

As discussed below, these relevant jurisdictional facts clearly demonstrate that CSI is subject to personal jurisdiction in California.

## IV.

## APPLICABLE LEGAL STANDARDS

This Court may exercise personal jurisdiction over a nonresident defendant to the extent permitted by due process. *Harris Rutsky & Co. Ins. Services, Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1129 (9th Cir. 2003); *IO Group, Inc. v. Pivotal, Inc.*, 2004 U.S. Dist. LEXIS 6673, *6 (N.D. Cal. April 19, 2004). As this Court has recognized, in order for the exercise of personal jurisdiction to comport with due process, the nonresident defendant must possess sufficient minimum contracts with California and the maintenance of the suit must not "offend traditional notions of fair play and

1  substantial justice." *IO Group*, 2004 U.S. Dist. LEXIS 6673, *6, quoting *Int'l Shoe Co. v.*

2  *Washington*, 326 U.S. 310, 316 (1945).

3      Personal jurisdiction can be based upon either general jurisdiction or specific jurisdiction.

4  *Gator.com Corp. v. L.L. Bean, Inc.*, 341 F.3d 1072, 1076 (9th Cir. 2003); *The Flintkote Co. v. General*

5  *Accident Assurance Co. of Canada*, 2004 U.S. Dist. 18192, *5 (N.D. Cal. September 7, 2004).  Where

6  the defendant's contacts or commercial activities impact California on a "substantial, continuous and

7  systematic" basis, general jurisdiction exists.  *Perkins v. Benguet Consolidated Mining Co.*, 342 U.S.

8  437, 446-47 (1952); *Vons Cos., Inc. v. Seabest Foods, Inc.* (1996) 14 Cal. 4th 434.

9      In determining whether general jurisdiction exists, courts examine "whether the defendant

10 makes sales, solicits or engages in business in the state, serves the state's markets, designates an agent

11 for service of process, holds a license, or is incorporated there.  *Bancroft & Masters, Inc. v. Augusta*

12 *Nat'l Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000); *see also IO Group*, 2004 U.S. Dist. LEXIS 6673 at

13 *6.  In addition, requiring the defendant to defend itself in California must be reasonable.  *Amoco*

14 *Egypt Oil Co. v. Leonis Navigation Co.*, 1 F.3d 848, 851, n. 2 (9th Cir. 1993); *Moody*, 2008 U.S. Dist.

15 LEXIS 14759 at *7.

16     Specific jurisdiction exists where the nonresident defendant's contacts are less substantial, yet

17 the nonresident defendant performs an act(s) or consummates some transaction(s) whereby it

18 purposefully avails itself of the privilege of doing business in California, and the plaintiff's claims

19 arise out of or relate to such forum-related activities.  *Cybersell v. Cybersell*, 130 F.3d 414, 416 (9th

20 Cir. 1997).  In addition, as with general jurisdiction, the court's exercise of jurisdiction must be

21 reasonable.  *Id*.

22     The requirement of purposeful availment is met where the defendant has "performed some

23 type of affirmative conduct which allows or promotes the transaction of business within the forum

24 state." *Sher v. Johnson*, 911 F.2d 1357, 1362 (9th Cir. 1990).  In order to meet the second

25 requirement, the claims asserted must be related to or arise out of such conduct.  *Ziegler v. Indian*

26 *River County*, 64 F.3d 470, 473 (9th Cir. 1995).

27     In order to defeat CSI's Motion to Dismiss, Plaintiff bears the burden of making a *prima facie*

28 showing that jurisdiction exists.  *Harris Rutsky*, 328 F.3d at 1129; *Ballard v. Savage*, 65 F.3d 1495,

1   1498 (9th Cir. 1995).  To meet this burden, Plaintiff "need only demonstrate facts that if true would

2   support jurisdiction over the defendant."  *Doe, I v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir.

3   2001)(per curiam), quoting *Ballard*, 65 F.3d at 1498.

4           As it has previously acknowledged in multiple decisions, the Court "must take uncontroverted

5   allegations as true and resolve conflicts between the facts contained in the parties' affidavits in favor

6   of" Plaintiff.  *IO Group*, 2004 U.S. Dist. LEXIS 6673 at *10, citing *Gator.com Corp.*, 341 F.3d at

7   1075-76; *Flintkote*, 2004 U.S. Dist. 18192 at *8, citing *Gator.com Corp.*, 341 F.3d at 1075-76; *see*

8   *also AT&T v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996).

9                                            **V.**

10                                        **ARGUMENT**

11  **A.      The Court Possesses General Jurisdiction Over CSI**

12          **1.      CSI has substantial, continuous and systematic contacts with California sufficient**

13                  **for the exercise of general jurisdiction**

14          In light of the jurisdictional facts conveyed above, CSI has substantial, continuous and

15  systematic contacts with California sufficient for the exercise of general jurisdiction.

16          In determining whether general jurisdiction exists, the Court should consider such factors as

17  "whether the defendant makes sales, solicits or engages in business in the state, serves the state's

18  markets, designates an agent for service of process, holds a license, or is incorporated [here]."

19  *Bancroft*, 223 F.3d at 1086.  While the standard for general jurisdiction is high, CSI's contacts with

20  California "approximate [its] physical presence."  *Tuazon v. R.J. Reynolds Tobacco Co.*, 42 F.3d 1163,

21  1169 (9th Cir. 2006).  Like the defendant in *Tuazon*, CSI not only has stepped through the door, it also

22  has sat down and made itself at home.  *Id*.

23          As reflected above, CSI is the "employer" of the thousands of individuals in California who

24  work at its retail locations and other facilities.[10]  CSI has readily – and repeatedly – admitted that it

25  ─────────────────────

26  [10] CSI's admissions are also entirely consistent with the definition of an "employer" under California
    law.  For purposes of California's labor laws, the term "employer" denotes "any person . . . who
27  directly or indirectly, or through an agent or any other person, employs or exercises control over the
    wages, hours, or working conditions of any person."  *See* Wage Orders promulgated by the Industrial

28

1   "employs approximately 30,000 associates" in 48 states, including California.  (Hubble Dec., Ex. A at

2   p. 12; Ex. B at p. 17; Ex. L; Ex. M.)  Even the handbook provided to Lane Bryant employees – and

3   relied upon by CSI through Ms. Ackley's declaration – reflects that *only CSI* can alter the terms of an

4   associate's employment.  (Hubble Dec., Ex. D at p. 1).

5        Moreover, CSI has substantial activities in California, including its operation of 175+ retail

6   store locations and its Quality Control facility in Santa Fe Springs, California.  (Hubble Dec., Ex. Q;

7   Ex. R; Ex. U-X.)  CSI has represented it each of its retail locations is "*operated under [CSI's] direct*

8   *management*."  (Hubble Dec., Ex. A at p. 4.) (emphasis added.)  Through these facilities, CSI "makes

9   sales, solicits or engages in business in the state, [and] serves the state's markets."  *Bancroft*, 223 F.3d

10  at 1086.

11       Given the submitted evidence of CSI's substantial contacts with – and conduct within –

12  California, Plaintiff respectfully submits that she has established a *prima facie* case that CSI is subject

13  to general jurisdiction in California.  *See, e.g., Covad Communications Co. v. Pacific Bell*, 1999 U.S.

14  Dist. LEXIS 22789, *21 (N.D. Cal. December 14, 1999) (documents, including press releases and

15  Internet postings, demonstrated that defendant issued directives to its subsidiaries, oversaw marketing,

16  shared legal counsel, and participated in negotiation of agreements, constituted a *prima facie* showing

17  that defendant did "much more than simply hold stock in its regional companies" and was subject to

18  personal jurisdiction in California); *Tuazon*, 42 F.3d at 1170 (defendant that maintained an office and

19  a staff of permanent employees, advertised in local media, targeted local consumers, and derived

20  millions in annual revenues from sales in state was subject to general jurisdiction).

21

22

23

24  Welfare Commission at Section 2, 8 CCR §11090(2)(F).  This definition is patterned on the federal

25  law definition of "employer" set forth in the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §201 *et seq*., which includes "any person acting directly or indirectly in the interest of an employer in relation

26  to an employee . . . ."  29 U.S.C. §203(d).  Given the plethora of evidence that clearly supports the fact that CSI is the employer of all individuals who work in any of its "divisions/brands," Plaintiff intends

27  to seek summary adjudication that CSI is indeed the employer, and thus putting the issue of "who the employer is" to rest, once and for all, in this case.

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### 2.    CSI cannot establish that the exercise of general jurisdiction in this action would be unreasonable

Where – as here – a plaintiff has demonstrated the *prima facie* existence of general jurisdiction, a presumption arises that the exercise of personal jurisdiction is reasonable.  *See Roth v. Garcia Marquez*, 942 F.2d 617, 625 (9th Cir. 1991).  As this Court recognized in denying CSDI's motion to dismiss, "the burden is on the defendant to put forth a ***compelling*** case that jurisdiction would be unreasonable."  *Moody*, 2008 U.S. Dist. LEXIS 14759 at \*21 (emphasis added); *see also Bancroft*, 223 F.3d at 1088 (9th Cir. 2000); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-77 (1985).

As was the case in connection with CSDI's motion, CSI has not demonstrated any hardship or suggested, in any way, that proceeding with the action in California would be unreasonable, let alone put forth the compelling evidence necessary to overcome the presumption of reasonableness.  *See Moody*, 2008 U.S. Dist. LEXIS 14759 at \*21.

Setting aside CSI's failure to make ***any*** showing whatsoever as to the alleged unreasonableness of proceeding with this suit in California, the factors to be considered by this Court demonstrate, instead, that proceeding with this action in California is entirely reasonable.  More specifically, (1) the extent of CSI's conduct within California are substantial; (2) given the presence of its wholly-owned subsidiaries CSDI and LBI and the fact that all three parties are represented by the same counsel, the burden upon CSI of proceeding with this action in California is minimal; (3) California has a strong interest in adjudicating the claims of its citizens that arise under California labor laws; (4) given the presence of CSDI and LBI, the most efficient manner of proceeding with this dispute is in California; (5) the presence of Plaintiff and the vast majority, if not all, of the putative class members in California weighs in favor of proceeding in California; and (6) there is not a more appropriate forum for the resolution of this dispute.  *See Bancroft*, 223 F.3d at 1088

Given the existence of general jurisdiction over CSI in California, CSI's failure to rebut the presumption of reasonableness and the overwhelming evidence demonstrating the reasonableness of proceeding with this action in California, the Court must deny CSI's Motion to Dismiss in its entirety.

**B.    The Court Possesses Specific Jurisdiction Over CSI**

    **1.    CSI has purposefully directed actions within California**

The purposeful availment prong of the minimum contacts analysis involves a "qualitative evaluation of the defendant's contacts with the forum state."  *Harris Rutsky*, 328 F.3d at 1130, quoting *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987).  As noted above, the requirement is met where the defendant has "performed some type of affirmative conduct which ***allows or promotes the transaction of business*** within the forum state."  *Sher*, 911 F.2d at 1362 (emphasis added); *see also Harris Rutsky*, 328 F.3d at 1130.

If the Court determines that CSI's conduct is insufficient to establish general jurisdiction, it is clear that CSI's activities constitute purposeful conduct aimed at California.  Indeed, to make a *prima facie* showing that CSI purposefully directed actions within California, Plaintiff "need only demonstrate facts that if true would support jurisdiction over" CSI.  *Concat LP v. Unilever*, PLC, 350 F. Supp.2d 796, 812 (N.D. Cal. 2004); *Ballard*, 65 F.3d at 1498

As set forth in detail above, CSI has stated over and over that it is the "employer" of the approximately 30,000 associates in its various retail locations, including the thousands of employees at the 175+ retail locations that CSI operates in California.  (Hubble Dec., Ex. A at p. 12; Ex. B at p. 17; Ex. L; Ex. M; Ex. Q; Ex. R.)  Moreover, CSI admits all of the 175+ retail locations in California are "***operated under [CSI's] direct management***."  (Hubble Dec., Ex. A at p. 4.) (emphasis added.)

Plaintiff respectfully submits that the evidence detailed herein establishes a *prima facie* case that CSI's substantial conduct in connection with its ownership and operation of the retail stores satisfies the requirement of purposeful availment.

    **2.    The purposeful conduct of CSI's incorporated divisions must be imputed to CSI for purposes of determining specific jurisdiction.**

In the event the Court is not convinced that CSI has purposefully directed conduct within California as a result of its ownership and operation of over 175 retail stores, CSI remains subject to this Court's specific jurisdiction as a result of the substantial conduct of its wholly owned subsidiaries,

1    including, but not limited to, LBI, [11] that was targeted at and within California.

2        As a general rule, a parent will not be subject to jurisdiction solely as a result of the contacts of

3    its wholly-owned subsidiary, where the parent's involvement in the subsidiary's activities is consistent

4    with the parent's investor status.  *See Doe, I*, 248 F.3d at 926.  Where, however, the subsidiary

5    functions as nothing more than "an incorporated department" of the parent, the subsidiary's presence

6    may be imputed to the parent.  *Id*. at 928.

7        Rather than act in a limited capacity as a mere investor in its incorporated retail divisions, the

8    admissions in CSI's securities filings, on its website, and in CSI's press releases clearly establish that

9    CSI was involved in the day-to-day operations of its retail stores.  Setting aside the conclusory

10    declarations submitted in this case, CSI has repeatedly represented to the public that it is involved in

11    virtually every aspect of the operations of its retail stores, including identifying store locations, store

12    design and construction, inventory management, loss prevention, the provisions of employee benefits,

13    the determination of compensation, marketing, distribution, the elimination of stores and termination

14    of employees.  (Hubble Dec., Ex. G; Ex. I; Ex. J; Ex. T.)  In its most recent 10-K Annual Report, CSI

15    even admits that it is actively involved in continuing efforts to "***reduce store payroll hours***."  (Hubble

16    Dec., Ex. A at p. 41.) (emphasis added.)

17        Not only does the evidence clearly establish that CSI's subsidiaries, such as LBI, are nothing

18    more than incorporated divisions, but also CSI time and again has characterized such entities not as

19    separate and independent companies, but as "***divisions***" or "***brands***" within CSI.  (Hubble Dec., Ex. A

20    at p. 1; Ex. B at p. 10; Ex. F; Ex. L.)  Even the handbook provided to Lane Bryant associates

21    characterizes Lane Bryant as a "brand" or "division" within CSI.  (Hubble Dec., Ex. D at pp. 4, 6.)

22        Faced with analogous situations, courts have repeatedly utilized the contacts of the

23    "incorporated division" to exercise jurisdiction over a parent corporation.  *See, e.g., Concat*, 350 F.

24    Supp.2d at 812 (parent subject to specific jurisdiction where documents showed that companies within

25    ownership group acted as "a single entity with a single management team" and cooperated in all areas

26    _____

27    [11] As acknowledged in CSI's Motion to Dismiss, LBI has not challenged the Court's exercise of
     jurisdiction and has answered Plaintiff's First Amended Complaint.

28

1  of management); *Virtualmagic Asia, Inc. v. Fil-Cartoons, Inc.* (2002) 99 Cal. App. 4th 228, 245

2  (exercise of jurisdiction in California was appropriate where subsidiary was "nothing more than an

3  incorporated department of the parent"); *Bellomo v. Pennsylvania Life Co.*, 488 F. Supp. 744, 746-47

4  (S.D.N.Y. 1980) (exercise of jurisdiction appropriate where parent's representations to stockholders

5  and potential investors established that it was "not merely an investor, but [] rather a super-corporation

6  engaged primarily in underwriting and selling a variety of insurance policies through several

7  subsidiaries"); *Paneno v. Centres for Academic Programmes Abroad Ltd.* (2004) 118 Cal. App. 4th

8  1447, 1456 (where subsidiary is only a means through which the parent corporation acts and "is

9  nothing more than an incorporated department of the parent," the contacts of the subsidiary will be

10  imputed to the parent for purposes of jurisdiction).

11       The evidence detailed above sets forth a *prima facie* case that the purposeful conduct of CSI's

12  "incorporated divisions," including, but not limited to, LBI, must be imputed to CSI for purposes of

13  determining specific jurisdiction.

14       **3.    Plaintiff's claims arise out of the forum-related conduct**

15       Plaintiff's claims arise out of the conditions and terms of her employment with CSI, including

16  CSI's failure to properly pay overtime wages and violation of California meal break requirements.

17  (*See* First Amended Complaint, ¶¶ 36-40; 44-46; 48-53.)

18       As set forth in detail above, CSI's purposeful conduct aimed at California concerns CSI's

19  operation of over 175 retail locations within California, as well as its corresponding employment of

20  thousands of sales associates at such locations.  Alternatively, the purposeful availment of CSI's

21  "incorporated divisions" – namely their activities in connection with the operation of the 175+ retail

22  locations in California – must be imputed to CSI for purposes of determining specific jurisdiction.

23       Clearly, Plaintiff's employment-related claims are related to or arise out of the operation of the

24  retail stores by CSI or its incorporated division.  *See Ziegler*, 64 F.3d at 473.  Stated otherwise, "but

25  for" the improper policies and procedures in place at the retail stores, Plaintiff's injury – and the injury

26  to the putative class members – would not have occurred.  *See, e.g., Ballard*, 65 F.3d at 1500, citing

27  *Shute v. Carnival Cruise Lines*, 897 F.3d 377 (9th Cir. 1990)

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**4.      CSI cannot establish that the exercise of specific jurisdiction in this action would be unreasonable**

As with general jurisdiction, where a plaintiff has established the first two elements of specific jurisdiction, a presumption arises that the exercise of personal jurisdiction is reasonable.  *See Flintkote*, 2004 U.S. Dist. 18192 at *8, citing *Roth*, 942 F.2d at 625.  As detailed above, in order to overcome this presumption, CSI bears the burden of establishing a ***compelling*** case that the exercise of such jurisdiction would be unreasonable.  *Id.*; *Burger King Corp.*, 471 U.S. at 477 (where nonresident has significant activities within the forum state, "it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well" and defendant "must present a compelling case" that the exercise of jurisdiction would be unreasonable.)

As set forth above, not only has CSI failed to demonstrate any hardship or suggest, in any way, that proceeding with this action in California would be unreasonable, let alone put forth the "compelling" evidence necessary to overcome the presumption of reasonableness, but also the factors to be considered by this Court in making such a determination weigh heavily in favor of the reasonableness of proceeding with this litigation in California.

Accordingly, the Court should deny CSI's Motion to Dismiss in its entirety.

**C.      Plaintiff Should Be Permitted Further Discovery On Jurisdictional Issues**

While Plaintiff believes that the above-described evidence constitutes a *prima facie* showing that jurisdiction exists over CSI, in the event that this Court is inclined to grant CSI's Motion to Dismiss, Plaintiff requests that the Court stay any ruling n CSI's Motion to Dismiss pending initial discovery as to jurisdictional issues.  *See Data Disc, Inc. v. Systems Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977); *DeMelo v. Toche Marine, Inc.*, 711 F.2d 1260, 1271 n. 12 (5th Cir. 1983).

More specifically, Plaintiff should also be allowed to propound written discovery requests, obtain documentation and conduct deposition discovery regarding the extent of the CSI's participation in the day-to-day activities of its incorporated divisions, such as LBI, including the extent of CSI's involvement in:

- reducing store payroll hours;
- the decision to close approximately 150 retail stores, as well as the locations of the closed stores;

PLAINTIFF'S OPPPOSITION TO DEFENDANT'S MOTION TO DISMISS
C 07-06073 MHP

- the determination of associate compensation;
- the provision of employee benefits to associates;
- in inventory management;
- identifying new store locations and the negotiation of store leases;
- in store design and construction;
- loss prevention;
- in marketing;
- in distribution/logistics;
- the elimination of employee positions and termination of employees; and
- budgeting, auditing and payroll functions.

(Hubble Dec., ¶ 30.)

In addition, Plaintiff should be permitted to obtain and review documentation including employee handbooks for all of the retail locations of CSI's brands in California, wage statements, organizational charts, joint management documents and joint human resources documents.  (Hubble Dec., ¶ 31.)

## VI.

## CONCLUSION

For the above and foregoing reasons, CSI's Motion to Dismiss must be denied in its entirety. Plaintiff has made a prima facie showing that CSI is subject to personal jurisdiction in California, and CSI has failed to rebut the presumption that the court's exercise of such jurisdiction would be reasonable.

Alternatively, should the Court be inclined to grant CSI's Motion to Dismiss, Plaintiff should be permitted the opportunity to conduct written and deposition discovery as to jurisdictional issues before this Court.

Dated:  April 14, 2008                                LAW OFFICES OF PETER M. HART


By:  _____/ s /_____
          Peter M. Hart, Esq.
          Attorney for Plaintiff and the Putative Class