UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SHAMEIKA MOODY, as an individual and on behalf of others similarly situated,

          Plaintiff,

  v.

CHARMING SHOPPES OF DELAWARE, INC.; LANE BRYANT, INC.; CHARMING SHOPPES, INC.; and DOES 1 through 20, inclusive,

          Defendants.

No. C 07-06073 MHP

**MEMORANDUM & ORDER**

**Re: Defendant Charming Shoppes, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction**

On October 11, 2007 plaintiff Shameika Moody ("Moody"), on behalf of herself and others similarly situated, brought the instant action against Charming Shoppes of Delaware, Inc. On January 18, 2008 plaintiff amended her complaint to add Lane Bryant, Inc. and Charming Shoppes, Inc. ("CSI") as defendants. Plaintiff alleges that while she was employed at a Lane Bryant retail store, some or all of the defendants: 1) failed to pay her overtime wages pursuant to California Labor Code sections 1194 et. seq.; 2) violated California Labor Code section 203; 3) violated California Labor Code section 226.7; 4) committed fraud; 5) violated California Labor Code section 226; and 6) engaged in unfair business practices as defined by California Business and Professions Code sections 17200 et. seq. Now before the court is CSI's motion to dismiss for lack of personal jurisdiction. The court has considered the parties' arguments fully, and for the reasons set forth below, the court rules as follows.

BACKGROUND

I.  Procedural History

Plaintiff Shameika Moody was employed as an assistant manager at a Lane Bryant retail store in California from November 2006 to July 2007. Amended Complaint at 4. She alleges that during this time CSI and other defendants intentionally failed to pay her and other Lane Bryant employees overtime wages as required by California law. Id. at 10–11. She also alleges that CSI and other defendants required Lane Bryant employees to work through required meal breaks. Id. at 12. As a result, plaintiff seeks to recover the unpaid balance of her overtime wages, compensation for missed meal periods, interest, waiting time penalties, attorneys fees and costs of suit. Id. at 17–18.

II.  Jurisdictional Facts

Lane Bryant, Inc. ("Lane Bryant"), where plaintiff was employed, is a wholly-owned subsidiary of CSI, a publicly-traded company incorporated and headquartered in Pennsylvania. Lane Bryant owns and operates all Lane Bryant stores in California. Ackley Dec., ¶ 3; Sullivan Dec., ¶ 10. All of Lane Bryant's key operational officers work out of its corporate headquarters in Columbus, Ohio and none of these people are directors, officers or managers of CSI. Ackley Dec., ¶ 2. According to the vice-president of human resources for Lane Bryant, the business operations of Lane Bryant stores are independent of CSI. Id., ¶ 3. The same individual averred that Lane Bryant, through its management, establishes the policies and practices which apply to Lane Bryant employees. Id., ¶¶ 4–6.

CSI, Lane Bryant's parent company, has a number of direct and indirect operating subsidiaries which own and operate retail stores in California. Sullivan Dec., ¶¶ 3, 8. CSI's contacts with California do not include a physical office, mailing address, or bank accounts. Id., ¶¶ 6–7. CSI is not incorporated in and has no physical presence in California, does not make sales in California, does not solicit or engage in business in California, does not serve the State's markets, does not have a designated agent for service of process in California and does not hold a license in California. Id.

Indeed, unlike its subsidiary—Charming Shoppes of Delaware, Inc.—CSI does not send money, paychecks, wage statements or payroll taxes into the state of California. Id., ¶ 9.

CSI purports to control Lane Bryant only through the election of Lane Bryant's board of directors. Id., ¶ 8. Lane Bryant and CSI have one director in common and eleven of Lane Bryant's twenty-three officers are also officers of CSI. Id., ¶ 4. There is no evidence as to how much control is exerted over Lane Bryant through this arrangement; however, CSI does report the financial results of its subsidiaries on a consolidated basis. Id., ¶ 4.

CSI also often references Lane Bryant in: 1) filings with the Securities and Exchange Commission ("SEC"); 2) press releases; and 3) its website. It states that it operates over 2,400 retail stores under the names Lane Bryant, Fashion Bug and others, and that employees of its various retail brands are employees of CSI. Specifically, in SEC filings, its Annual Report and on its website, CSI states: 1) "we employed approximately 30,200 employees," "we hire," and "our employees" when referring to employees of its subsidiaries, Hubble Dec., Exh. A at 12; 2) it has "30,000 Charming Shoppes associates worldwide," id., Exh. B at 17; 3) "Charming Shoppes, Inc. employs approximately 30,000 associates," id., Exh. L. The SEC filing, however, also states that "[t]he terms 'the Company,' 'we,' and 'us,' and 'our' refer to Charming Shoppes, Inc., and, where applicable, our consolidated subsidiaries." Id., Exh. A at 28.

CSI states that it takes pride in paying "our store associates throughout the country a highly competitive wage." Id., Exh. S at 1. Its website details different job categories that are available to potential employees, including loss prevention, corporate, finance, technology services, logistics and distribution, customer service, marketing and public relations, credit, and real estate, store design and construction. Id., Exh. T. The website refers potential applicants interested in a position of its more than 2,400 retail stores to complete an application entitled "Charming Shoppes, Inc. Employment Application," wherein they check a box indicating the division in which the applicant seeks employment. Id., Exh. O. The website also lists the benefits available to these potential employees, where CSI makes representations that it "absorb[s] the majority of the cost," pays for certain types of insurance and has an employee stock option purchase plan. Id., Exh. P.

3

In addition, the handbook provided to Lane Bryant associates states:

> Nothing in this book or any other document not approved as a contract by the Chairman of the Board or the Executive Vice President of Human Resources at Charming Shoppes, Inc., is to be construed as creating a contract or term of employment.

Id., Exh. D at 1. The handbook goes on to state that Lane Bryant is a "brand" of CSI and refers to phone numbers "set up for employees of Charming Shoppes." Id. at 40. CSI also directly communicates with employees at the various retail stores. For instance, it sent a letter to all such employees in February 2008 discussing changes in executive management and CSI's decision to close certain retail locations. Id., Exh. C, Exh. 99.2 thereto.

CSI frequently represents that it operates the retail stores. For instance, its SEC filings state that "[a]s of February 2, 2008, we operated 2,409 stores in 48 states" and that "[a]ll retail stores are operated under our direct management." Id., Exh. A at 1, 4; see also id., Exh's. E, F, H–J (press releases stating CSI "operates" the retail stores). The SEC filings also state that CSI is continuing its efforts "to selectively reduce store payroll hours" id., Exh. A at 41, and that its board of directors and management team have "[t]ightened inventory levels . . . reducing same store inventories," id., Exh. J.

The individual in charge of the Lane Bryant brand reports to CSI. Id., Exh. H at 1. Other executive officers also report to CSI. Id., Exh. G. There is no argument that CSI sits atop the reporting hierarchy with respect to its various brands, including Lane Bryant.

Finally, CSI purportedly has a distribution facility in Santa Fe Springs, California where it employs individuals for quality control purposes. Id., Exh's. U, W, X. CSI, however, avers that the distribution facility is owned by a third party and the employees there are employees of Charming Shoppes of Delaware, Inc.—not CSI. Sullivan Supp. Dec., ¶¶ 4–5.

LEGAL STANDARDS

Plaintiff bears the burden of proving that the court may exercise personal jurisdiction over the defendant. Schwarzenegger v. Fred Motor Co., 374 F.3d 797, 800 (9th Cir. 2004). If the jurisdictional challenge is based solely on written papers, plaintiff must make a prima facie showing

4

of jurisdiction. Harris Rutsky & Co. Ins. Servs. v. Bell & Clements, Ltd., 328 F.3d 1122, 1129 (9th Cir. 2003). If, however, the court holds an evidentiary hearing on the issue, then the burden on the plaintiff increases to a preponderance of the evidence. Rano v. Sipa Press, Inc., 987 F.2d 580, 587 n.3 (9th Cir. 1993).

Where there is no federal standard establishing personal jurisdiction, district courts apply the jurisdictional standards of the state in which the district court sits. Panavision Int'l, L.P. v. Toeppen, 141 F.3d 1316, 1320 (9th Cir. 1998). California courts may properly exercise personal jurisdiction to the extent allowed by the Due Process Clause of the United States Constitution. Threlkeld v. Tucker, 496 F.2d 1101, 1103 (9th Cir. 1974). Courts may exercise personal jurisdiction over a nonresident defendant, consistent with due process, if the defendant has "certain minimum contacts" with the forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Int'l. Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (internal quotations omitted).

If a nonresident defendant has contacts with the forum state that are "substantial" or "continuous and systematic," then courts may exercise general personal jurisdiction over the defendant without regard to whether the action arises from the defendant's activities in the forum state. Perkins v. Benguet, 342 U.S. 437 (1952). If a nonresident defendant's activities within the forum state are less substantial, then courts may still exercise specific personal jurisdiction where the action arises out of or is related to the defendant's particular activities within the forum state. Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 n.8 (1984).

DISCUSSION

I.   General Jurisdiction

CSI asserts that its contacts with California are not sufficient to establish general personal jurisdiction because CSI lacks an actual, physical presence in California. Plaintiff argues that CSI has significant, systematic and continuous contacts with California resulting from its "employment" of the employees at the various retail stores "operated" by CSI.

The Ninth Circuit interprets Perkins and Helicopteros as establishing a "fairly high standard" for general jurisdiction. Brand v. Menlove Dodge, 796 F.2d 1070, 1073 (9th Cir. 1986); see also Amoco Egypt Oil Co. v. Leonis Navigation Co., 1 F.3d 848, 851 n.3 (9th Cir. 1993) ("[w]e have stated that the Perkins holding that the cause of action need not arise out of the defendant's activities in the forum is limited to its unusual facts and regularly have declined to find general jurisdiction even where the contacts were quite extensive") (internal quotations omitted). Factors weighing heavily in the general jurisdiction analysis include whether the defendant: 1) is incorporated in the state; 2) makes sales in the state; 3) solicits or engages in business in the state; 4) serves the state's markets; 5) designates an agent for service of process in the state; or 6) holds a license in the state. Bancroft & Masters, Inc. v. Augusta Nat'l, Inc., 223 F.3d 1082, 1086 (9th Cir. 2000). This standard requires not only a showing of "substantial" or "continuous and systematic" contacts, but also reasonableness in requiring the defendant to defend itself in the forum state. Amoco, 1 F.3d at 851 n.2 (citing Asahi Metal Indus. Co. v. Superior Court, 480 U.S. 102 (1987)).

Plaintiff argues that defendant's admissions regarding employment and operation of retail stores subjects it to general jurisdiction in California because they demonstrate that CSI "makes sales, solicits or engages in business in the state, [and] serves the state's markets." Bancroft, 223 F.3d at 1086. Plaintiff's conclusion, however, does not follow. CSI's statements to the SEC are merely inclusive statements that contend that Lane Bryant's employees are its own employees. This is a common business practice, and as the sole owner of Lane Bryant, CSI may make generic statements about Lane Bryant's employees and the operation of Lane Bryant stores. See Calvert v. Huckins, 875 F. Supp. 674, 678–79 (C.D. Cal. 1995); see also Sonora Diamond Corp. v. Superior Court, 83 Cal. App. 4th 523, 550 (2000). Defendant has not pointed to any case which holds that generic admissions can subject a party to in personam jurisdiction. Similarly, collective references in press releases do not establish in personam jurisdiction either. See F. Hoffman-LaRoche v. Superior Court, 130 Cal. App 4th 782, 801 (2005) ("under California law, consolidated reporting, joint employment of professional services, and the use of 'we' or 'the company' are typical and actually expected of affiliated or wholly owned companies, and such facts do not establish agency

6

1 for purposes of jurisdiction. The evidence here of joint reporting or collective media releases did not
2 go beyond this normal incidence of ownership that is contemplated within the parent/subsidiary
3 context.").

4     In addition, the handbook passage cited above—stating that the handbook or documents not
5 approved by CSI are insufficient to create an employment relationship—does not create jurisdiction.
6 The passage merely states that the handbook does not create a contract or term of employment. It
7 then allows for documents approved by CSI to constitute contracts or terms of employment. This
8 does not rise to continuous or systematic contacts. Indeed, a subsidiary's use of policies and
9 handbooks created by the parent is insufficient to establish personal jurisdiction. See Arce v.
10 Aramark Corp., 239 F. Supp. 2d 153, 172 (D. Puerto Rico 2003); Hvide Marine Int'l, Inc. v.
11 Employers Ins. of WAUSAU, 724 F. Supp. 180, 187 (S.D.N.Y. 1989).

12     Plaintiff's reliance on Covad Commc'ns Co. v. Pac. Bell, 1999 U.S. Dist. LEXIS 22789, at
13 *21–*23 (N.D. Cal. Dec. 14, 1999), is to no avail. Even though the court there held that "[g]iven the
14 wide array of documents presented to the Court, representing either that SBC is present in California
15 or is, in fact, more than a simple holding company, the Court finds that plaintiff has stated a prima
16 facie case of personal jurisdiction over SBC," the court went on to say that it "does not agree,
17 however, that personal jurisdiction may be exercised under an 'agency' theory." Id. Jurisdiction
18 was therefore premised on SBC's presence in California due to the maintenance of an office there,
19 SBC's recruitment of employees in California, and the fact that SBC signed 554 interconnection
20 agreements and spent $ 1.3 billion to open its local phone markets. The case at bar is obviously
21 factually distinguishable. Tuazon v. R.J. Reynolds Tobacco Co., 433 F.3d 1163, 1175 (9th Cir.
22 2005), is similarly factually inapposite—unlike in that case, CSI does not have a permanent office
23 and workforce in California nor is it licensed to do business in California. Id. at 1174.

24     Finally, the alleged facility maintained by CSI in California does not establish general
25 jurisdiction. The Court must resolve disputed jurisdictional facts found in affidavits and declarations
26 regarding jurisdictional issues in favor of plaintiff. See Am. Tel. & Telegraph Co. v. Compagnie
27 Bruxelles Lambert, 94 F.3d 586, 588 (9th Cir. 1996). However, the declarations here demonstrate
28

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

7

that a facility exists in Southern California and that either CSI or Charming Shoppes of Delaware, Inc. has some permanent employees there. CSI denies employing these individuals. Plaintiff has not put forth any evidence that the employees are in fact CSI employees and not employees of Charming Shoppes of Delaware, Inc. Consequently, with no evidence that it has direct employees in the state of California, CSI is not subject to general jurisdiction on that basis.

In sum, based on the evidence presented, CSI's contacts with California are insufficient to support general jurisdiction. Indeed, no actual conduct or contact in California has been demonstrated. Therefore, the court does not reach the reasonableness prong.

II.   Specific Jurisdiction

Specific jurisdiction exists if: 1) the defendant has performed some act or consummated some transaction within the forum or otherwise purposefully availed himself of the privileges of conducting activities in the forum; 2) the claim arises out of or results from the defendant's forum-related activities; and 3) the exercise of jurisdiction is reasonable. Bancroft, 223 F.3d at 1086. The first prong of this test requires that the defendant either purposefully avail itself of the privileges of conducting activities in the forum state or purposefully direct its activities toward the forum state. Schwarzenegger, 374 F.3d at 802. Typically, evidence of purposeful availment will include "action taking place in the forum that invokes the benefits and protections of the laws in the forum," while evidence of purposeful direction will include "action taking place outside the forum that is directed at the forum." Pebble Beach Co. v. Caddy, 453 F.3d 1151, 1155 (9th Cir. 2006).

Purposefully directed activities are analyzed under the Calder effects test. Calder v. Jones, 465 U.S. 783 (1984). The Ninth Circuit has interpreted Calder to impose three requirements. The defendant must have 1) committed an intentional act, 2) expressly aimed at the forum state, which 3) causes harm that the defendant knew was likely to be suffered in the forum state. Yahoo! Inc. v. La Ligue Contre Le Racisme et L'Antisemitisme, 433 F.3d 1199, 1206 (9th Cir. 2006) (citing Schwarzenegger, 374 F.3d at 803). It is important to consider the "extent of the defendant's contacts with the forum and the degree to which the plaintiff's suit is related to those contacts" because "[a]

8

strong showing on one axis will permit a lesser showing on the other." Id. at 1210.

### A. Purposeful Availment/Purposeful Direction

CSI claims not to have performed any intentional acts or engaged in any activities directed at California. Plaintiff first argues that CSI's admission that it has employees and operates retail stores in California constitute a basis for specific jurisdiction. For the same reasons as above, these "admissions" are not sufficient to rise to purposeful availment. Plaintiff also argues that personal jurisdiction has been established because the corporate relationship between CSI and Lane Bryant allows this court to impute Lane Bryant's contacts with California to CSI.

While CSI is correct that personal jurisdiction cannot be premised on corporate affiliation or stock ownership alone, a corporate relationship that extends beyond mere corporate affiliation—such as an agency or alter ego relationship—will suffice. Harris Rutsky, 328 F.3d at 1134–35 (finding that although corporate relationship did not establish jurisdiction, single act of inconsistency with corporate relationship was enough to allow for jurisdictional discovery). This can be established through pervasive and continual control over the subsidiary which effectively renders the subsidiary an instrumentality of the parent. Sonora Diamond Corp., 83 Cal. App. 4th at 541–42.

The Covad decision, which plaintiff cites, clarified the standard:

> A parent company must exercise substantial day-to-day control of its subsidiary in order for its subsidiary to be viewed as its agent. . . . The 'agency test is satisfied by a showing that the subsidiary functions as the parent corporation's representative, that it performs services that are sufficiently important to the foreign corporation that if it did not have a representative to perform them, the corporations' own officials would undertake to perform substantially similar services.'

1999 U.S. Dist. LEXIS 22789, at *21–*23 (quoting Doe, I v. Unocal Corp., 27 F. Supp. 2d 1174 (C.D. Cal 1998)). The court even stated that "neither confusing or misleading brand advertising nor shared legal counsel is sufficient to show agency." Id., at *23

Generic language on CSI's website and in its press releases simply do not rise to the day-to-day control required to impute the subsidiary's contacts to the parent. Similarly, SEC filings which specify strategic goals, such as a reduction in payroll hours or same store inventories, do not demonstrate control over day-to-day operations of the individual brands. Indeed, the parent company is well within its rights to delineate goals the subsidiary must accomplish and enforce the

9

1  same by creating a hierarchy with accountability.  Further, CSI's reporting on its subsidiaries'

2  financial results does not establish the existence of an alter ego relationship.  Doe, I v. Unocal Corp,

3  248 F.3d 915, 928 (9th Cir. 2001).  The same applies to the reference of subsidiaries as "divisions."

4  Id.

5         Concat LP v. Unilever, PLC, 350 F. Supp. 2d 796, 812 (N.D. Cal. 2004), does not help

6  plaintiff.  There, "Unilever's own literature explain[ed] that the companies within the group act as a

7  single entity with a single management team,' that they co-operate in all areas, and -- of signal

8  importance -- that they exchange all relevant business information."  Id.  There is no such evidence

9  here.  Virtualmagic Asia, Inc. v. Fil-Cartoons, Inc., 99 Cal. App. 4th 228, 245 (2002), is also

10 unhelpful since it simply recites the applicable standard.

11        In sum, plaintiff has not been able to demonstrate that Lane Bryant is an "incorporated

12 division" of CSI, even though CSI occasionally refers to Lane Bryant as a division or brand.  Indeed,

13 there is no evidence that corporate formalities have been ignored, that Lane Bryant is under-

14 capitalized or that CSI exerts control over Lane Bryant's day-to-day operations.  At best, plaintiff

15 has been able to demonstrate that CSI may provide certain shared services for its brands, such as a

16 consolidated application process or a template employee handbook.  This does not demonstrate that

17 the same was forced upon Lane Bryant by CSI or that the practices at issue in this case were dictated

18 by CSI.  As a result, this is an improper basis for jurisdiction.  The court's conclusion stands even if

19 all of CSI's subsidiaries use the same employment application process or substantively similar

20 employee handbooks.  To the extent CSI provides shared services, they seem to be designed to

21 exploit economies of scale.

22        Since CSI does not meet the first prong, analysis of the other two prongs of specific

23 jurisdiction is unnecessary.

24        Finally, plaintiff has made no credible argument that evidence of day-to-day control exists or

25 would be discoverable.

26 ///

27 ///

28

///

CONCLUSION

For the foregoing reasons, CSI's motion to dismiss for lack of personal jurisdiction is GRANTED. This dismissal is without prejudice to a motion to amend to add CSI if and when there is evidence to support general or specific jurisdiction consistent with this order.

IT IS SO ORDERED.

Dated: May 16, 2008

_____
MARILYN HALL PATEL
United States District Court Judge
Northern District of California